**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JOSHUA G.[1]                                          Case No. 2:25-cv-199

        Plaintiff,                              Cole, J.
  v.                                              Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Joshua G. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled.  *See* 42 U.S.C. § 405(g).  Proceeding through counsel, Plaintiff presents one claim of error, which the Defendant disputes.  As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability should be **AFFIRMED**, because it is supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff applied for supplemental security income (SSI) in April 2018, claiming disability beginning as of February 18, 2019. (Tr. 126, 365-70). His applications were denied initially and upon reconsideration. (Tr. 126, 150-56, 160-64).  After a hearing, the ALJ issued an unfavorable decision in June 2021, finding that Plaintiff was not under a disability as defined in the Social Security Act (Act) (Tr. 126-38).  However, in August 2022, the Appeals Council remanded the case for further consideration of Plaintiff's mental impairments. (Tr. 144-47). On December 13, 2023, a new ALJ issued an

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.  *See* General Order 22-01.

unfavorable decision finding that Plaintiff was not disabled as defined in the Act. (Tr. 17-31).

Plaintiff was born in 1985 and was 33 years old on date his application was filed. He has a limited education.  Plaintiff has a history of mental health issues and substance abuse.  He has no past relevant work.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "major depressive disorder; generalized anxiety disorder; panic disorder; post-traumatic stress disorder (PTSD); attention deficit hyperactivity disorder (ADHD); paranoid personality disorder; cannabis use disorder; and opioid use disorder."  (Tr. 20). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform a full range of work subject to the following limitations:

> He can understand, remember, and carry out simple instructions and tasks in a routine work environment that involves no more than occasional changes, no production based quotas such as found in assembly line work, occasional interaction with coworkers and supervisors, and no interaction with the public.

(Tr. 23). Based upon his RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including such jobs as floor cleaner, wall cleaner, hospital cleaner. (Tr. 1017). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.  (Tr. 30, 31).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff

2

argues that the ALJ's RFC finding is not substantially supported. Plaintiff's contention is not well taken.

**I.      Analysis**

**A.  Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence because he erred in improperly weighing the opinion evidence.  Specifically, Plaintiff

argues that the ALJ erred in finding the opinions of Dr. Rowland, Dr. Matyi, and Dr. Rivera were not persuasive.

The new regulations for evaluating medical opinions are applicable to this case because Plaintiff's claim was filed after March 27, 2017. See 20 C.F.R. § 416.920c (2017). The new regulation at 20 C.F.R. § 416.920c differs from the previous regulation at 20 C.F.R. § 416.927 in several key areas. The agency no longer has a "treating source rule" deferring to treating source opinions. 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Under the new regulations, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a). Further, while the ALJ must articulate consideration of all medical opinions, the new regulations no longer mandate the "controlling weight" analysis or the "good reasons" standard in weighing a treating source opinion. Compare 20 C.F.R. § 416.927(c)(2) with 20 C.F.R. § 416.920c(a), (b).

The ALJ is only required to explain how he or she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical source's opinion or a prior administrative medical finding. 20 C.F.R. § 416.920c(b)(2). The ALJ may, but is not required to, explain how he or she considered the other remaining factors in paragraphs (c)(3) through (c)(5) when articulating how he or she considered medical opinions. See 20 C.F.R. §§ 416.920c(b)(2)-(3).

> In practice, this means that the "supportability" factor "concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other

objective medical evidence." *Reusel v. Comm'r of Soc. Sec.*, No. 5:20-CV-1291, 2021 WL 1697919, at *7 n.6 (N.D. Ohio Apr. 29, 2021) (citing SSR 96-2p, 1996 SSR LEXIS 9 (July 2, 1996) (explaining supportability and inconsistency); 20 C.F.R. § 404.1527(c)(3), (4) (differentiating "supportability" and "consistency"); 20 C.F.R. § 404.1520c(c)(1), (2) (further clarifying the difference between "supportability" and "consistency" for purposes of the post-March 27, 2017 regulations)).

As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, supportability addresses whether a medical professional has sufficient justification for their own conclusions. *See Crystal E.J. v. Comm'r of Soc. Sec.*, No. 2:21-CV-04861, 2022 WL 2680069 (S.D. Ohio July 12, 2022) (Preston Deavers, M.J.).

Here, on September 25, 2018, Susan Rowland, Ph.D, RN, provided a psychological evaluation, finding that Plaintiff would have "moderate limitations in understanding, carrying out, and remembering both one-step and complex instructions." (Tr 537). Dr. Rowland also opined that Plaintiff would have "moderate limitations in sustaining concentration and persisting in work-related activity at a reasonable pace," and moderate limitations in maintaining effective social interactions with coworkers, supervisors, and the public. Id.

At the initial level, Plaintiff's medical records were reviewed by State agency medical consultant Cindy Matyi, PhD on September 25, 2018. Tr 97, 107. Dr. Matyi opined that Plaintiff has moderate limitations in understanding, remembering, and carrying out one-step and complex instructions. (Tr 98). She further opined that Plaintiff has moderate limitations in maintaining effective social interactions on a consistent basis with

6

supervisors, co-workers, and the public, as well as moderate limitations dealing with normal work pressures. Id. In light of such limitations, Dr. Matyi opined that Plaintiff may benefit from a relatively isolated workstation. (Tr 102).  On reconsideration, Dr. Rivera affirmed these findings.

In formulating Plaintiff's RFC, the ALJ found Dr. Rowlands findings of moderate limitations are generally persuasive, however, the finding of moderate limitations in understanding, carrying out, and remembering one-step instructions is not persuasive. (Tr. 27).  The ALJ found that Dr. Rowland's indication of a poor prognosis and an inability to trust others are not persuasive. In so concluding, the ALJ noted that Dr. Rowland did provide support for her opinion; however, the examination findings did not support the moderate limitation in one-step instructions, as the examination showed Plaintiff's intelligence was estimated to be in the low average range, his thought processes were clear, linear, organized, and goal directed, his memory was intact, he appeared attentive, and his insight and judgment were intact.  The ALJ further noted that while Dr. Rowland noted an inability to trust people, she also found only moderate limitations in effective social interactions, and she observed Plaintiff to be cooperative. Id. She noted that rapport was easily established and maintained, and he appeared reasonably candid. Id. (internal citations omitted).  As such, the ALJ determined that the opinion of moderate limitation in the ability to understand, carry out, and remember one step instruction and would have a poor prognosis are also inconsistent with the sporadic treatment history and the objective findings of record. *Id.*

With respect to Dr. Matyi and Dr. Rivera, the ALJ concluded that their findings were not persuasive.  Notably, the ALJ determined that while the finding of moderate limitations

is consistent with the overall record, and the record does show Plaintiff is limited to a routine work environment, occasional changes, no production based quotas, occasional interaction with coworkers and supervisors, and no interaction with the public, the record does not support a finding that Plaintiff is able to complete occasional complex tasks. (Tr. 28-29). Further, the ALJ found that the record does not support the findings that the claimant needs a relatively isolated workstation, superficial interaction or minimal interaction with others or need continued supervisory support with no over the shoulder supervisory scrutiny beyond interaction limitations stated in the above residual functional capacity. (Tr. 29).

The ALJ further noted that while the record shows Plaintiff is limited to occasional interaction with coworkers and supervisors, and no interaction with the public, it also shows the claimant was consistently noted to be cooperative and pleasant with good eye contact. (Tr. 28). As noted above, treatment notes indicated that rapport was easily established and maintained. Additionally, the ALJ noted that while the record does show the Plaintiff to be limited to routine work, no more than occasional changes, and no production-based quotas, it does not support further limitations such as the need for additional supervisory support or the need to have changes be well explained and introduced slowly. Despite the Plaintiff's impairments, the ALJ noted Plaintiff was observed to have from fair to good insight and judgment. He was well groomed, awake, alert, oriented, cooperative, and pleasant with normal thought processes and speech. (Tr. 29).

Plaintiff argues that the ALJ's evaluation of these opinions failed to comply with Agency regulations because the ALJ did not properly evaluate the supportability and

consistency of their opinions.  In this regard, Plaintiff further argues that the ALJ cherry picked the evidence to contradict these opinions. Plaintiff's contentions lack merit.

Here, the ALJ properly evaluated these opinions in accordance with Agency regulations and controlling law.  As noted by the Commissioner, the ALJ found that Dr. Rowland and Dr. Rivera provided some support for their findings, noting Plaintiff's reported symptoms, however, they also noted that Plaintiff had no difficulty understanding and was attentive, his concentration was intact, and he sat calmly throughout the interview. (Tr. 28, 102-04, 115, 117). 20 C.F.R. § 416.920c(c)(1) (supportability). The ALJ also noted that while the findings of moderate limitations were consistent with the overall record, the record showed that Plaintiff was limited to a routine work environment with occasional changes but without production-based quotas. (Tr. 28-29). 20 C.F.R. § 416.920c(c)(2) (consistency).  Moreover, as noted by the ALJ, the record demonstrated that Plaintiff could occasionally interact with co-workers and supervisors, but not interact with the public.

In making these determinations, the ALJ also properly considered the clinical findings.  The ALJ found that Plaintiff could occasionally interact with co-workers and supervisors with no interaction with the public as the record showed that Plaintiff consistently appeared cooperative and pleasant with good eye contact. (Tr. 29, see also Tr. 534, 542, 546, 551, 556, 561, 618, 622, 626, 630, 812). Plaintiff easily established and maintained rapport with a stranger. (Tr. 29, 534). Additionally, while the record showed Plaintiff was limited to routine work with occasional changes and no production-based quotas, it did not support the further limitations for additional supervisory support or the need to have the changes well explained and introduced slowly. (Tr. 29). Plaintiff

9

appeared alert, oriented, awake, cooperative, pleasant, and well-groomed with normal thought process, normal speech, and fair to good insight and judgment. (Tr. 29, 618, 630). He had normal memory, attention, concentration, insight, and judgment (Tr.21-22, 25, 27, 536, 542, 546, 551, 556, 618, 626, 630, 733- 34, 737, 750, 761, 776, 812).

Plaintiff argues, *inter alia*, that although he was found to be cooperative and pleasant on evaluation, treatment notes consistently note his mental health issues, such as being on the brink of relapse, having maximum anxiety and depression levels, hearing voices in his head, frequent fighting with his wife, and feeling that someone was out to get him. (Tr 546, 705). Plaintiff further asserts that in September 2018, treatment notes again documented good physical appearance and grooming, but also noted he complained that 'everything is bad" and his anxiety being at a "10/10 level." (Tr. 604). Despite presenting well in one-on-one sessions, Plaintiff contends that the record continually documents that he feels his psychological symptoms are the worst when he is around others in social situations. (Tr 593). Plaintiff has described that his heart races and his chest tightens when socializing. Id. Doctors have consistently diagnosed him with anxiety, and he has unsuccessfully tried various medications to combat his symptoms. (Tr 733, 736, 761, 775).

Additionally, in arguing that the ALJ's RFC is not supported by substantial evidence, Plaintiff also points to his testimony at the administrative hearing, wherein he alleges that his responses were disorganized, marked by repeated false starts, confusion and an inability to articulate coherent thoughts.

However, as noted by the Comissioner, Plaintiff's arguments amount to an attempt to have this Court reweigh the record and come to a contrary decision. That is not the

10

role of the Court. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 443 (6th Cir. 2017). The ALJ was confronted with the not uncommon scenario of conflicting opinion evidence. Id. at 442 ("Shepard contends that there is conflicting evidence in the record that demonstrates she was incapable of light work during the relevant period. That may be so, but when the ALJ is 'presented with the not uncommon situation of conflicting medical evidence[,] [t]he trier of fact has the duty to resolve that conflict.') (citing *Richardson v. Perales,* 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Our job is only to ensure that the Commissioner's determination is supported by substantial evidence.").

As detailed above, the ALJ properly evaluated the opinion evidence.  As long as the ALJ's decision, when read as a whole, shows that she substantively considered the supportability and consistency factors, the ALJ's decision must be affirmed. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (recognizing that the ALJ's decision should be read as a whole when determining whether his consideration of the opinion evidence was consistent with the regulations).  Such is the case here.

Accordingly, the undersigned finds that the ALJ's decision is substantially supported.  It is well established that it is Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence. Here, Plaintiff argues only that evidence exists from which the ALJ could have drawn a different conclusion. That is not enough. *See Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The evidence summarized above easily constitutes

11

"substantial evidence" to support the ALJ's evaluation of the opinion evidence. While Plaintiff may disagree with that assessment, he has failed to demonstrate any factual or legal error. A court may not reverse so long as the ALJ's analysis falls within a "zone of choice," a standard that is met here.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

*/s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

12

JOSHUA G.                                          Case No. 2:25-cv-199

             Plaintiff,                          Cole, J.

    v.                                             Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

             Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

13